UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA              :

           - v. -                              :    10 Cr. 1265 (JSR)

JASON PFLAUM,                         :

           Defendant.                :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## GOVERNMENT'S SUBMISSION
## PURSUANT TO SECTION 5K1.1 OF THE GUIDELINES


PREET BHARARA
United States Attorney for the
Southern District of New York
Attorney for the United States
    of America.

ANTONIA M. APPS
DAVID MILLER
Assistant United States Attorneys



*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 18, 2013

BY HAND AND REQUEST TO BE FILED UNDER SEAL

The Honorable Jed S. Rakoff
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    United States v. Jason Pflaum,
             10 Cr. 1265 (JSR)

Dear Judge Rakoff:

      The Government respectfully submits this letter to advise the Court of the pertinent facts concerning the assistance that Jason Pflaum has rendered in the investigation of others. In light of these facts, and assuming that the defendant continues to comply with the terms of his cooperation agreement, commits no additional crimes before sentencing, and appears for his sentencing as scheduled, the Government intends to move at sentencing, pursuant to Section 5K1.1 of the Sentencing Guidelines, that the Court sentence the defendant in light of the factors set forth in Section 5K1.1(a) of the Guidelines.

## I. Background

      In or about 2009, the Government intercepted wiretap calls between Pflaum and various "experts" who were employed at publicly-traded companies and consulting through Primary Global Research ("PGR"), an expert networking firm. At the time, Pflaum was employed as a research analyst at Barai Capital Management ("BCM"), a hedge fund located in New York with approximately $100 million in assets under management and run by Samir Barai.

      On or about October 20, 2010, FBI agents approached Pflaum in an apartment building and asked to speak to him. Pflaum consented to being interviewed and did not first insist on consulting with counsel. In that initial interview, Pflaum immediately acknowledged speaking to numerous public company employees in an effort to obtain inside information from them. From the very outset, Pflaum admitted his conduct, did not lie to FBI agents or otherwise diminish his conduct, and agreed to cooperate with the Government's investigation. Pflaum subsequently retained counsel and agreed to attend numerous proffers with the Government.

The Honorable Jed S. Rakoff
January 18, 2013
Page 2

## II. Pflaum's Cooperation

### A. Pflaum's Proffers

In his proffers with the Government, Pflaum was fully debriefed about his background, his own involvement in insider trading, the criminal activities of his colleagues at BCM, the insiders who provided him and Barai with inside information, and other members of the investment community who engaged in insider trading.

Pflaum, a graduate of Colgate University, began in the finance industry working as a sell-side analyst at Thomas Weisel Partners ("Thomas Weisel"). For the approximately 9 years he worked at Thomas Weisel, Pflaum did not engage in insider trading.

Pflaum began working as a technology analyst at BCM in or about March 2008. Shortly thereafter, Barai introduced Pflaum to PGR and directed Pflaum to contact numerous public company insiders, previously known to Barai, who worked as consultants for PGR. In his proffers, Pflaum identified numerous public company insiders from whom he received inside information, including Anthony Mark Longoria, an employee at Advanced Micro Devices, Inc. ("AMD"); Daniel Devore, a Global Supply Manager at Dell; ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Each of these insiders provided Pflaum with inside information concerning their respective employer's quarterly performance and other business developments. For example, Longoria provided Pflaum with top-line revenue numbers on two occasions, and also provided unit shipment figures and ASPs (average selling prices) for AMD's product lines on a monthly basis. DeVore provided unit shipment numbers for Dell's desktop and notebook computers, which represented approximately 60 percent of Dell's business, and provided market share and pricing information for Dell's suppliers, Western Digital and Seagate.

In addition, Barai had a network of company insiders and consultants with whom he consulted when he was at a prior hedge found called Tribeca Capital. These consultants provided Barai and at times Pflaum with inside information about numerous publicly-traded companies. One such individual was Winifred Jiau, who provided Barai with the essential details of the quarterly earnings announcements of NVIDIA Corp. ("NVIDIA") and Marvell Technology Group, Ltd. ("Marvel") before the earnings were publicly announced. Pflaum did not know how Jiau obtained the non-public earnings report prior to the announcement. Often, Barai and his friend Noah Freeman, an analyst and portfolio manager who was then at Sonar Capital Management LLC, participated in the calls with Jiau together. Because Barai was hearing impaired, Barai would sometimes ask Pflaum or another BCM employee to listen in on the calls, which were also at times recorded by the other BCM employee with an audio recording device maintained at BCM. At times, Pflaum would also transcribe the calls for Barai. Pflaum informed the FBI about the recordings and the notes of the calls with the insiders.

Pflaum fully acknowledged that he knew some of the information he received from the PGR consultants and other insiders was inside information on which he could not trade.

The Honorable Jed S. Rakoff
January 18, 2013
Page 3

Nevertheless, any information Pflaum received from the insiders was passed to Barai, who then caused BCM to trade on the inside information. Pflaum recalls that BCM earned trading profits in 2008 and 2009 from trades BCM made based on inside information, such as the inside information obtained from Longoria, Jiau and others.

After Raj Rajaratnam was arrested, in or about October 2009, Pflaum was hesitant to obtain inside information through PGR and largely stopped consulting with Longoria, █████ and others. Also, following Raj Rajaratnam's arrest, Pflaum deleted some e-mails he had maintained reflecting communications with PGR consultants and other insiders, as well as some spreadsheets containing book-to-bill information provided by Longoria █████. Despite deleting some records, Pflaum maintained voluminous incriminating records that he turned over to the Government as part of his proffers. For example, Pflaum maintained detailed notes of his conversations with various insiders, including Winifred Jiau █████████, on his personal laptop.

As a result of his proffer statements, the Government obtained search warrants to seize files from Pflaum's desktop and laptop computers, Barai's computer, and the audio-recording device and audio cassette used to record conversations with Jiau. These records have proven incredibly valuable to the investigation and prosecution of others. For example, the recording device included a recording of Barai and Freeman obtaining inside information from Jiau regarding Marvell and NVIDIA, and coaching Jiau to find new sources of Inside Information.

In addition, before he ever received a cooperation agreement with the Government, Pflaum agreed to cooperate proactively with the Government, in two respects. First, Pflaum had incriminating e-mails and instant message communications with Barai that he engaged in at the request of the FBI and then turned over to the FBI as evidence against Barai. Several of those conversations concerned a November 20, 2010 article in the Wall Street Journal that revealed, for the first time, that the U.S Attorney's Office was investigating PGR and had placed a wiretap on PGR phones. In those instant message communications, Barai stated that he was very concerned with the news of a PGR wiretap. For example, in one such BBM communication Barai wrote, "Problem is this scope is said to focus on the use of so-called expert network firms. Concern for years that some experts may be passing on conf info about public cos to traders. That was in reuters. If u read all kinds of news U can pick up small tidbits from different reporters. . . . PGR was only [consulting network] named. Fuuuuuuck." In addition, in other communications between Barai and Pflaum, Barai explicitly engaged in conduct intended to obstruct the Government's investigation. For example, Barai instructed Pflaum to "delete ur bbm chatr," and asked Pflaum to delete his notes with Longoria. Barai concluded the BBM chain by instructing Pflaum to "shred as much as us can" and to "put all ur data files onto an encrypted drive." Then, on November 21, 2010, Barai asked Pflaum to leave his laptop computer with Pflaum's doorman so that Barai can pick it up and delete its contents. Pflaum did as he was asked, although he copied his files onto a flash drive to provide to the Government. Later that night, Barai picked up Pflaum's computer from Pflaum's doorman. Throughout Barai's obstructive conduct, Pflaum was in constant communication with the FBI, followed the FBI's instructions without reservations, and substantially assisted the FBI in obtaining evidence of Barai's obstruction of justice and insider trading.

The Honorable Jed S. Rakoff
January 18, 2013
Page 4

Second, Pflaum agreed to make consensual recordings of conversations with various subjects of the Government's investigation. Over the course of approximately two months, Pflaum called three separate subjects and recorded nearly twenty conversations (or attempted conversations) with those subjects, including an in-person meeting. The subjects were employed at two separate hedge funds and one public company. To date, none of those individuals have been arrested for reasons entirely unrelated to Pflaum's efforts and assistance.

### B. Pflaum's Guilty Plea

On or about December 17, 2010, Pflaum appeared before the Honorable John G. Koeltl and pled guilty to a two-count Information charging him with (i) participating in a conspiracy, from mid-2008 through October 2010, to commit securities fraud through insider trading, pursuant to Title 18, United States Code, Section 371, and (ii) substantive securities fraud for the period mid-2008 through October 2009, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2, and Title 18, United States Code, Section Two. The charges carry a maximum sentence of 25 years' imprisonment.

At his plea allocution, Pflaum acknowledged that "[b]eginning in mid-2008, I agreed with Sam Barai and others to violate the securities laws" and that "[o]n more than one occasion, . . . I participated in phone calls with individuals working in publicly traded technology companies . . . [who] provided me with material nonpublic information, including, on occasion, forecasts of product shipments and specific quarterly financial performance data."

### C. Pflaum's Substantial Assistance

Pflaum has provided substantial assistance to the Government in numerous significant investigations and prosecutions. In particular, (1) Pflaum's information has directly resulted in the arrests and convictions of four individuals, which has, in turn, led to other important prosecutions and convictions; (2) he has provided (and continues to provide) important information in connection with the Government's ongoing insider-trading investigations; (3) he engaged in covert, proactive cooperation at the direction of the FBI for a number of months; (4) he testified in two separate proceedings in *United States* v. *Winifred Jiau*, 11 Cr. 161 (JSR), and (5) he was prepared to testify at two separate proceedings in *United States* v. *James Fleishman*, 11 Cr. 32 (JSR).

Throughout his cooperation, Pflaum has remained straightforward and honest; and, as demonstrated by the resulting prosecutions, his assistance has been both substantial and of great utility. His commitment to cooperate has never wavered from the moment he was first approached by the FBI, and his memory has remained consistent. To his credit, Pflaum has been careful not to speculate or exaggerate and only testified about matters of which he had a clear recollection. Pflaum's information has been corroborated by consensual recordings, wiretap recordings, testimony from other cooperating witnesses, telephone toll records, trading records, e-mails, instant message communications, and other documentary evidence. Pflaum has never

The Honorable Jed S. Rakoff
January 18, 2013
Page 5

attempted to mitigate his own criminal conduct or to shift responsibility for his own actions. To the contrary, he took responsibility for insider trading conduct (such as obtaining inside information from Winifred Jiau ▮▮▮▮▮▮▮▮▮▮) that the Government did not even know about at the time he was approached. Further, Pflaum has spent dozens of hours with prosecutors in preparing to testify in the *Jiau* and *Fleishman* cases, and did so despite dealing with serious personal hardships, including having to fly across country (he moved to the mid-west) while his wife was submitting to cancer treatment.

Pflaum had direct information about the following individuals:

### 1. Noah Freeman

Based on the information provided by Jason Pflaum, and in particular the audio recordings that Pflaum detailed for the Government (which were obtained by search warrant), the Government developed a strong insider trading case against Noah Freeman. Pflaum was the first individual to provide us incriminating evidence against Freeman. On or about December 14, 2010, the FBI approached Freeman and, after playing the BCM recording of the telephone conversation between Freeman and Jiau, successfully persuaded Freeman to cooperate with the Government's investigation. On or about February 7, 2011, Freeman pled guilty before the Honorable Deborah A. Batts to a two count Information charging Freeman with participating in a conspiracy to commit securities fraud through insider trading and substantive securities fraud. *See United States* v. *Freeman*, 11 Cr. 116 (DAB).[1]

### 2. Samir Barai

Based on the information, documents, and recordings obtained through Pflaum, as well as the cooperation of Noah Freeman, the Government developed a powerful case against Samir Barai for insider trading and obstruction of justice. Because Barai was hearing-impaired, the Government had not intercepted him over any of its wiretaps, and thus, Pflaum was the first individual to provide us incriminating evidence directly against Barai. On or about February 8, 2011, Barai was arrested on charges of insider trading and obstruction of justice. Given the strength of the proof against him, Barai quickly agreed to cooperate with the Government's investigation. On or about May 27, 2011, Barai pled guilty before the Honorable Deborah A. Batts, pursuant to a cooperation agreement, to a four count Information that charged Barai with conspiracy to commit securities fraud and wire fraud, substantive securities fraud, substantive wire fraud, and obstruction of justice. *See United States* v. *Barai*, 11 Cr. 116 (DAB). Barai's cooperation remains ongoing.

---

[1] Freeman subsequently cooperated against numerous other co-conspirators, and his cooperation resulted in the arrest and conviction of, among other individuals, his best friend Donald Longueuil, a hedge fund portfolio manager at SAC Capital. Freeman's cooperation remains ongoing.

The Honorable Jed S. Rakoff
January 18, 2013
Page 6

### 3. Winifred Jiau

Based on the information and recordings provided by Pflaum, as well as the cooperation of Noah Freeman, the Government charged Jiau in a complaint dated December 23, 2010 with conspiracy to commit securities fraud and substantive securities fraud. Jiau was subsequently indicted by a Grand Jury in this District, along with Donald Longueuil. *See United States* v. *Jiau and Longueuil*, 11 Cr. 161 (JSR). Following her indictment, Jiau insisted on a speedy trial and trial was scheduled before the Honorable Jed S. Rakoff for June 2011.

Prior to Jiau's trial, a suppression hearing was held regarding the admissibility of the consensual recordings of Jiau's conversations with Barai and Freeman. Pflaum testified at the evidentiary hearing. The Court denied Jiau's motion, clearly crediting Pflaum's testimony that the recordings of Jiau were made at Barai's request and with his consent.

Pflaum also testified at Jiau's trial and his testimony was critical to her conviction. At trial, Jiau's defense was based largely on a claim that the information Jiau provided Barai was not material and did not cause trading by BCM. Pflaum's trial testimony was essential to disputing this defense, as Pflaum testified that trading by BCM in Marvell prior to the May 31, 2008 earnings announcement was the result of Barai's receiving inside information about Marvell's announcement in the days prior to the announcement. Pflaum also explained why the information she provided was so material to BCM's trading determinations. In part as a result of Pflaum's testimony, Jiau was convicted on both counts of the indictment after only a few hours of jury deliberations. On or about September 21, 2011, Jiau was sentenced to 4 years' imprisonment.

### 4. Anthony Mark Longoria

As stated above, Pflaum provided the Government with helpful information about his conversations with Longoria, and the trading by BCM based on Longoria's information. Although Longoria was approached by the FBI a few days before Pflaum was approached, Pflaum's information assisted in obtaining a guilty plea from Longoria. On June 30, 2011, Longoria pled guilty to four counts: conspiracy to commit securities and wire fraud, conspiracy to commit wire fraud, substantive securities fraud (expressly based on the inside information that Longoria provided to Pflaum, who was identified by name in Longoria's Information), and making false statements to the FBI and United States Attorney's Office. *See U.S.* v. *Mark Anthony Longoria*, S4 11 Cr. 32 (JSR). Longoria has not been sentenced; his cooperation is ongoing.

### 5. James Fleishman

The Government listed Jason Pflaum as a witness in the trial of James Fleishman and a subsequent *Fatico* hearing, although ultimately decided on both occasions not to call Pflaum for its own strategic reasons rather than anything to do with Pflaum's truthfulness or willingness to testify. In particular, Pflaum would have provided important incriminating evidence as to Fleishman's co-conspirators and the manner in which PGR facilitated the distribution of inside

The Honorable Jed S. Rakoff
January 18, 2013
Page 7

information to its clients.  Pflaum invested considerable efforts in preparing for his testimony in this case, and was always available when the Government requested his attendance.



### III. Conclusion

As described in detail above, Pflaum's assistance was critical to the investigation and prosecution of numerous individuals involved in insider trading.  The Government believes that Pflaum's statements to the Government and his testimony in the case of *United States* v. *Winifred Jiau* were truthful, as much of it has been corroborated by other sources of information, including other cooperating witnesses, telephone records, recordings, trading records, and e-mails, instant messages, and documentary evidence.  Pflaum engaged in proactive cooperation for a number of months at the direction of the FBI.  Further, while proffering with the Government and assisting FBI agents in ongoing investigations, and while preparing for his testimony, Pflaum met with the Government dozens of times, and was always available to the Government, even after Pflaum moved his family out of state.  In short, Pflaum was always willing to undertake any assistance requested by the Government.

Moreover, while the individuals against whom Pflaum cooperated were not dangerous and did not pose any risk of physical harm to Pflaum or his family, Pflaum incurred significant financial and reputational harm as a result of his cooperation.  Pflaum agreed to cooperate with federal authorities at the earliest stage possible, immediately upon being approached by the FBI, without first consulting with counsel, and before he was ever arrested.  Because his cooperation came at such an early stage of the investigation, his cooperation had a positive impact on the Government's far-reaching insider trading investigations in a substantial and proactive way.

In light of these facts, and assuming that the defendant continues to comply with the terms of his cooperation agreement, commits no additional crimes before sentencing, and appears for his sentencing as scheduled, the Government intends to request at sentencing,

The Honorable Jed S. Rakoff
January 18, 2013
Page 8

pursuant to Section 5K1.1 of the Sentencing Guidelines, that the Court sentence the defendant in light of the factors set forth in Section 5K1.1 of the Guidelines.

          Respectfully submitted,

          PREET BHARARA
          United States Attorney

By: *[signature]*
          Antonia M. Apps
          David Miller
          Assistant United States Attorneys
          (212) 637-2198/2484

cc:    Michael J. Grudberg, Esq. (By e-mail)